IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02139-NRN

C.B.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff C.B.[1] was not disabled for purposes of the Social Security Act. AR[2] 25. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #10.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge (ALJ) to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##9, and 9-1 through 9-8.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff has the severe impairments of seizure disorder; asthma; degenerative disc disease of the lumbar spine; anxiety and obsessive-compulsive disorders; and depressive, bipolar, and related disorders. AR 13. The ALJ determined that while Plaintiff was diagnosed with HIV and hepatitis C, the conditions are asymptomatic and therefore nonsevere. AR 14.

The ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. AR 14–16. After the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) subject to the following limitations: lifting and/or carrying ten pounds frequently and twenty pounds occasionally (from very little, up to one-third of an eight-hour workday); standing and/or walking (with normal breaks) for a total of six hours in an eight-hour workday; sitting (with normal breaks) for a total of six hours in an eight-hour workday; pushing and pulling motions with her upper and lower extremities, within the aforementioned weight restrictions; avoid unprotected heights and moving machinery; restricted to a "relatively clean" work environment (low levels of pollutants); frequent climbing of ramps or

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

stairs, stooping, crouching, kneeling, and crawling; no climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold; requires work which entails routine, repetitive tasks and simple decision-making; requires work which has minimal to no direct contact with the public; and the individual may accept supervision and interact with coworkers if contact is not frequent or prolonged.

AR 16.

The ALJ found that Plaintiff has no relevant past work. The ALJ then found that in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could successfully perform, including cafeteria attendant, cleaner, and marker. AR 24. Accordingly, the ALJ found that Plaintiff and not been under a disability from March 30, 2019 (the date the application was filed), through November 29, 2021, the date of the decision. AR 24–25.

## Analysis

Plaintiff argues that the finding of non-disability should be reversed on four grounds. Plaintiff first contends the ALJ erred when she found the opinion of State Agency psychological consultant, Dr. Anne Naplin, to be persuasive, but failed to incorporate Dr. Naplin's functional limitations into the RFC. Because the Court agrees with Plaintiff that the RFC does not adequately account for Plaintiff's moderate limitations in certain areas of mental functioning, it will not reach the remaining issues Plaintiff raises because they may be affected by the ALJ's treatment of this case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The ALJ summarized Dr. Naplin's opinion as follows.

Additionally, Anne Naplin, Ph.D. reviewed the evidence on behalf of the DDD on July 30, 2019. Dr. Naplin opined that the claimant retained the mental ability to do work involving some skills but not involving more complex duties. She could be expected to do work requiring up to one-half years' time to learn techniques, acquire information, and develop the facility

4

needed for an average job performance. She could not work closely with supervisors or coworkers but could accept supervision and relate to coworkers if contact was not frequent or prolonged. . . . The undersigned finds the opinion of Dr. Naplin to be persuasive, as it is consistent with the claimant's limited treatment history, normal mental status examinations, and the objective findings of the consultative evaluator. The undersigned did further limit the claimant to routine, repetitive tasks and simple decision-making, giving some weight to her subjective complaints of ongoing depression and anxiety and resulting difficulties with memory and concentration.

AR 22.

Plaintiff notes that in section I of her Mental Health Residual Functional Capacity Assessment ("MRFCA"), Dr. Naplin rated Plaintiff's limitations as to sustained concentration and persistence. Dr. Naplin said that, due to symptoms of anxiety and depression, Plaintiff would be, among other things, moderately limited in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 89.

Then, in section III of the MRFCA, Dr. Naplin's narrative explanation stated:

The claimant retains the mental ability to do work involving some skills but not involving more complex duties; can be expected to do work requiring up to ½ year's time to learn techniques, acquire information and develop facility needed for an average job performance; cannot work closely with supervisors or coworkers; can accept supervision and relate to coworkers if contact is not frequent or prolonged.

AR 90. This narrative portion is what the ALJ relied on in her decision. But neither the doctor's narrative nor the ALJ's decision reflect the moderate limitations set forth in the section one worksheet.

The agency defines a "[m]oderate" limitation in mental functioning in a work setting as one in which the claimant's "functioning in this area independently,

appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2.c. But "a moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Moderate limitations must be accounted for in the RFC; and ALJ may not "pick and choose through an uncontradicted medical opinion," rejecting some moderate restrictions without explanation while accepting others. *Id.*

The Commissioner argues that under *Fannin v. Commissioner, SSA*, 857 F. App'x 445 (10th Cir. 2021), the ALJ was not required to discuss the limitations that the consultants recorded in the worksheet portion of the MRFCA form. In *Fannin*, the Tenth Circuit held that, when asking hypothetical questions to a vocational expert, an ALJ may rely on an agency consultant's narrative mental RFC so long as the narrative RFC is consistent with the limitations found on the worksheet portions of the form. 857 F. App'x at 447–48; *see also Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (finding that the ALJ incorporated worksheet limitations "by stating how the claimant was limited in the ability to perform work-related activities"). But the Tenth Circuit has made clear that an ALJ should not "turn a blind eye to any moderate limitations enumerated in [the worksheet section] that are not adequately explained." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *see also Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (explaining that the Social Security Administration's Program Operations Manual System ("POMS") requires consultants to incorporate in the narrative portion all limitations found in the worksheet portion). Thus, an ALJ may only disregard limitations found in the worksheet portion when the narrative portion "adequately encapsulate[s]" them. *Carver*, 600 F. App'x at 619. That is not the case here.

As discussed above, Dr. Naplin recorded that Plaintiff's moderate limitations in her sustained concentration and persistence are due to her symptoms of anxiety and depression. AR 89. While some of these limitations are accounted for in the section III narrative (i.e., finding Plaintiff "retains the mental ability to do work involving some skills but not involving more complex duties; can be expected to do work requiring up to ½ year's time to learn techniques, acquire information and develop facility needed for an average job performance"), the additional explanation fails to address Dr. Naplin's finding that Plaintiff is moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace.

"[T]he ability to maintain regular attendance and to be punctual within customary tolerances is 'critical' for the performance of unskilled work, and—as distinct from nearly all other 'critical' abilities—'these tolerances are usually strict.'" *Gutierrez v. Kijakazi*, No. CV 20-552 KK, 2021 WL 4710508, at *6 (D.N.M. Oct. 8, 2021) (alterations omitted) (quoting POMS DI § 25020.010(B)(3)(e)). The only other "strict" requirement involves the ability to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, *see* POMS DI § 25020.010(B)(3)(i), which is the other area in which Plaintiff was found to be moderately limited but was not addressed in the RFC. In short, neither Dr. Naplin's opinion nor the ALJ's decision explains how Plaintiff could meet the demands of even unskilled work in the face of these moderate limitations.

The Court recognizes that Tenth Circuit has found in some instances that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith*, 821 F.3d at 1269; *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). But this is not always the case. *Vigil*, 805 F.3d at 1204; *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012). "Unless the connection (between the limitation and the work) is obvious, . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

In this case, the connection between the limitation and the work is not obvious. While the assigned RFC's limitation to work which entails routine, repetitive tasks and simple decision-making appears to address Plaintiff's impaired abilities to carry out detailed instructions, maintain attention and concentration for extended periods (per *Lee,* 631 F. App'x at 542), and sustain an ordinary routine without special supervision, the connection between these limitations and an impaired ability to attend work regularly and on time, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods is not clear. "And, absent an adequate explanation from the ALJ on this point, it would be inappropriate for the Court to speculate about what that connection might be." *Edgell v. Kijakazi*, No. CV 21-269 KK, 2022 WL 1987846, at *7 (D.N.M. June 6, 2022); *see also Peterson v. Saul*, 19-cv-486, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (restriction to simple, routine tasks did not sufficiently account for moderate limitation in ability to complete normal workday and workweek without interruptions and perform at consistent pace without an

unreasonable number and length of rest periods); *Romero v. Kijakazi*, No. CV 21-249 KK, 2022 WL 1553295, at *10 (D.N.M. May 17, 2022) (medical opinion that claimant can "carry out detailed but not complex instructions" and "attend and concentrate for two hours at a time" does not account for findings that the claimant is moderately limited in his abilities to sustain an ordinary routine without special supervision and complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace).

When an ALJ does not account for a medical source's assessed functional limitations by limiting the claimant to particular kinds of work activity, but instead assigns an RFC that contradicts the medical source opinion, the ALJ must explain why she did not account for the medical opinion in her RFC determination. *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence."). Where the ALJ does not adequately explain her rejection of a medical source opinion concerning the claimant's RFC, the case must be remanded for the ALJ to do so. *Haga*, 482 F.3d at 1208–09. Therefore, particularly in light of the "strict," "critical," and highly specific nature of the requirements in question, the Court finds that the ALJ's failure to either incorporate or discuss the findings of moderate limitations constitutes reversible error, and the case must be remanded for the ALJ to provide the required explanation or account for the limitations in the RFC.

## Conclusion

For the reasons set forth above, the Commissioner's decision is . Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 16th day of August, 2023

BY THE COURT:

_____

N. Reid Neureiter
United States Magistrate Judge